UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEON JACKSON,

       Plaintiff,

v.                                  Case No. 2:05-cv-188
                                        HON. R. ALLAN EDGAR

W. LEUTZOW, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Leon Jackson, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include W. Luetzow, Clement, Chipman, Bennink, Perry, Ordiway, Hosnick, Jacobson, and Huhta all of whom are employed at AMF.

Plaintiff's complaint alleges that he was attacked by another inmate on April 19, 2004. Plaintiff alleges that he was observed running down the hall being chased by another inmate by defendants Clement, Chipman, Bennick and Perry. When plaintiff ran to the end of the wing he turned around and began to fight. Plaintiff said that he realized the officers were not going to come to his aid, so he turned around to defend himself. Plaintiff injured his knee and broke his eye glasses. Plaintiff alleges that defendants simply watched the entire incident and failed to protect plaintiff. Ultimately, it was officers from outside the unit who broke up the fight. Plaintiff alleges that defendant Luetzow, as part of the Security Classification Committee (SSC), reviewed the incident incorrectly and placed plaintiff in segregation for the fight.

On April 24, 2004, plaintiff began experiencing chest pain.  Plaintiff alleges that he had an existing heart condition.  He asked defendant Huhta to see health care and Huhta said "Jackson, whatever," while walking away.  Later Huhta told plaintiff "Jackson, you are not going to get any medical help until you fill out a medical kite."  Plaintiff alleges that defendant Huhta placed plaintiff's life in danger for no reason.

Plaintiff alleges that on June 14, 2004, defendant Ordiway came to plaintiff's cell to review a grievance.  Plaintiff alleges that because the grievance concerned other inmates, defendant should have called plaintiff to his office instead of reviewing the grievance where other inmates could hear.  Plaintiff alleges that defendant Ordiway placed plaintiff's life in danger.

Plaintiff alleges that he was having chest pains when another inmate was gassed on June 22, 2004.  Defendant Hosnick came to plaintiff's unit, but instead of going to plaintiff's cell right away she continued to do her rounds before coming to plaintiff's cell approximately one half hour later.  Plaintiff alleges that defendant Hosnick's actions placed his life in danger.

On July 5, 2004, defendant Jacobson placed a tether on plaintiff for escorting plaintiff to and from yard time.  Plaintiff was allegedly having knee problems and defendant Jacobson was walking too fast for plaintiff to keep up.  Plaintiff alleges that he was practically being dragged by the tether.  Defendant Jacobson stated "come on move it, this is not a Jerry's Marathon."  Plaintiff asked if they were in a race and defendant responded, "yes."  Plaintiff then told defendant about his knee problem and defendant responded, "then we are going to have to see that you start missing some yard."  Plaintiff claims that defendant Jacobson abused his authority.

Defendants have filed a motion to dismiss or alternatively for summary judgment. To resolve the issues presented, the undersigned believes that it is necessary to review the affidavits and materials filed by the parties.  Therefore, defendants' motion to dismiss should be treated as a

motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue

of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing

there is an absence of evidence to support a claim or defense, then the party opposing the motion

must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that

there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on

its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at

324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct

evidence offered by the plaintiff in response to a summary judgment motion must be accepted as

true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375,

382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position

will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether

there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

*See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence

of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas

& Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind

created factual issue).

       Defendants Clement, Chipman and Perry argue that they are entitled to summary

judgment on plaintiff's failure to protect claim. Plaintiff alleged that these defendants failed to stop

prisoner Davenport from attacking and fighting plaintiff. In its prohibition of "cruel and unusual

punishments," the Eighth Amendment places restraints on prison officials, directing that they may

not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer v. Brennan*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 79 (6th Cir.1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Defendant Chipman was working in the Unit 5 Bubble.  The Bubble is an enclosed area inside the housing unit where keys and law books are stored.  Officers assigned to the Bubble are locked in and may not leave under any circumstances.  Officers in the Bubble can call officers into the unit when there is a need for assistance.  Defendant Chipman called for other officers for assistance when he observed plaintiff's involvement in the incident.  Other officers responded to the scene.  Defendants Bennick and Clement were releasing Unit 5 B-wing for chow when they observed the incident between plaintiff and prisoner Davenport at the end of the wing.  Defendants witnessed plaintiff fighting with prisoner Davenport.  Defendants Bennick and Clement immediately responded and separated the two inmates.  No evidence exists that defendants acted with deliberate indifference.  Plaintiff can point to no set of facts which could establish that any defendant possessed prior knowledge that an incident could occur between plaintiff and prisoner Davenport.  Contrary to plaintiff's assertion, each defendant did respond.  Defendant Chipman made the call for additional staff to respond to the incident and defendants Bennick and Clement, who were involved with other prisoners, responded when they observed plaintiff and prisoner Davenport fighting.  Under the

- 4 -

circumstances presented, there exists no evidence that defendants could have stopped the incident from occurring.  Defendants did their jobs and responded in a reasonable manner under the circumstances.  In the opinion of the undersigned, plaintiff has failed to show that defendants acted with deliberate indifference.

Plaintiff alleges that defendants Huhta, Hosnick and Jacobson violated his Eighth Amendment rights by being deliberately indifferent to plaintiff's medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. at 834.  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).  If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898,  the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

- 6 -

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also, Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Plaintiff alleges that defendant Hosnick was in the unit for approximately one-half hour before she came to see him. Contrary to plaintiff's assertion, defendant Hosnick claims that when she was told of plaintiff's shortness of breath, she saw plaintiff immediately, assessed the situation and gave him medication. Plaintiff claimed that the recent use of pepper gas spray triggered the incident. Defendant Hosnick had plaintiff removed from the unit to the Health Services exam room. Plaintiff was given three doses of nitroglycerin and a baby aspirin. Plaintiff was then transported to the local hospital by ambulance. Plaintiff has not shown that defendant was deliberately indifferent to his medical needs. Even if plaintiff is correct that there was a short delay in receiving care, defendant caused plaintiff no harm and responded appropriately by providing plaintiff with reasonable care. In the opinion of the undersigned, plaintiff cannot show that defendant Hosnick violated his Eighth Amendment rights.

Similarly, plaintiff claims that he had to pay for new eye glasses. Plaintiff is allowed a new pair of eye glasses at State expense every two years. Plaintiff has not established an Eighth

Amendment claim regarding his eye glasses.  Plaintiff has not complained that he was denied eye glasses or, more importantly, that any named defendant was involved in the alleged denial of eye glasses.  Plaintiff also has asserted that defendant Jacobson violated his Eighth Amendment rights by forcing him to walk faster from yard and by harassing plaintiff.  Plaintiff has not shown that he suffered any injury as a result of the alleged actions of defendant Jacobson.  Similarly, plaintiff has failed to show that defendant Huhta violated his Eighth Amendment rights.  In the opinion of the undersigned, plaintiff's Eighth Amendment claims should be dismissed.

Plaintiff has also asserted an equal protection claim based upon defendant Jacobson's alleged insensitive remarks.  Plaintiff alleged that defendant Jacobson asked if plaintiff was in a "Jerry's Marathon."  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S.CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff suggests that he is handicapped and defendant was making fun of him because of his handicap.  Plaintiff has not supported an equal protection claim based upon the alleged insensitive remarks that were made by defendant Jacobson.  Plaintiff has not alleged that any harm was caused by the alleged insensitive remark.  In the opinion of the undersigned, one isolated insensitive remark is insufficient to support

a violation of the equal protection clause. *Taylor v. City of Falmouth*, 2006 Wl 1889303, at 6 slip op. (6th Cir. July 10, 2006).

Plaintiff alleges that defendant Leutzow violated his due process rights by labeling him a security threat for fighting and placing him in administrative segregation. As a result of this incident, plaintiff was found guilty of a misconduct for fighting. Plaintiff cannot support a due process claim on this issue. Plaintiff's complaint alleges that defendants' actions violated his Fourteenth Amendment right to procedural due process. The Court concludes that this claim is without merit on the basis of *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995). In *Sandin*, the plaintiff alleged that prison officials deprived him of procedural due process by refusing to allow him to present witnesses during a disciplinary hearing and then sentencing him to segregation for misconduct. *Sandin*, 515 U.S. at 474, 115 S. Ct. at 2294. In reversing the Ninth Circuit's decision that the prisoner had a liberty interest in remaining free of disciplinary segregation, the Supreme Court abandoned the search for mandatory language in prisoner regulations as previously called for under *Hewitt v. Helms*, 459 U.S. 460 (1983), and ruled instead that it was time to return to the due process principles which were established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976). *Sandin*, 515 U.S. at 483, 115 S. Ct. at 2300 (internal citations omitted).

In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself. *Sandin*, 515 U.S. at 483-484, 115 S. Ct. at 2300 (internal citations omitted). In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300. However, such restraints are

rare and do not include, for example, transfer into solitary confinement. *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301. Nor does placement in administrative segregation normally constitute such a hardship. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995). In addition, plaintiff has no right to prison employment or to early release on parole. *Greenholtz v. Inmates, Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989). Moreover, there is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated. *Meachum*, 427 U.S. at 223-29[1]; *Olim v. Wakinekona*, 461 U.S. 238 (1983).

A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey*, 62 F.3d at 790-791. Pursuant to *Sandin*, "a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence, and there is no evidence here that the segregation will impact Plaintiff's sentence." *Jones*, 155 F.3d at 812. The Sixth Circuit has determined that a prisoner's placement in administrative segregation for over a year is not an atypical or significant hardship as to create a liberty interest in due process. *Mackey v. Dyke*, 111 F.3d 460, 461-63 (6th

---

[1]    In *Meachum v. Fano*, 427 U.S. 215, 223-229 (1975), the Court held that transfers between prisons of different severity, such as between a medium security prison and a maximum security prison, did not deprive the prisoner of liberty within the meaning of the Due Process Clause.

Cir.), *cert. denied*, 522 U.S. 848 (1997). Because plaintiff in this case fails to allege facts constituting an "atypical and significant hardship," plaintiff's claim that he was denied procedural due process is without merit.

Defendants argue that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the

- 11 -

unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Plaintiff has failed to show a violation of any clearly established federal right. In the opinion of the undersigned, defendants are entitled to qualified immunity.

Accordingly, it is recommended that defendants' motion for summary judgment (Docket #35) be granted and this case be dismissed.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  October 26, 2006

- 14 -